**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **KURT DECKER, JUAN PENA,** | § | |
| **JOHN RIPPAMONTI, MARK** | § | |
| **WAHLMAN, and STEPHEN LUCAS** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 2:21-CV-00181** |
| | § | |
| **MILWAUKEE ELECTRIC TOOL** | § | |
| **CORPORATION; et al.** | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANT MILWAUKEE'S MOTION FOR SANCTIONS AND SPOLIATION[1]

TO THE HONORABLE UNITED STATES DISTRICT COURT:

## SUMMARY

- This case involves a fire to Decker's workshop that occurred on April 12, 2020. Plaintiffs' expert, Glen Stevick's photos from his inspection on September 24, 2020 show that during his inspection, Milwaukee battery cells were picked up from outside the area of origin and placed on the table next to the area of origin to give the false impression that the fire marshal had found them in the area of origin and placed them on the table.[2]



---

[1] The Court held a Pre-Motion Conference on this motion during the Status Conference on April 10, 2024. The Court gave Milwaukee permission to file this motion for the Court's consideration.

[2] *See* Ex. A, Diagram of Kurt Decker's business and home, R. Meier Summary Report dated Nov. 13, 2023 at p. 7 (annotated).

- The deceptive conduct, including tampering with the scene during Stevick's inspection materially compromised Milwaukee's ability to present its case. It also created a false and unreliable basis for the Plaintiffs' experts' opinions. Moreover, the extensive disruption of the fire scene makes it impossible to know what other potential causes of the fire existed in the area of origin.

- Milwaukee did not receive notice of the fire until after the lawsuit was filed on July 20, 2021. The first time Plaintiffs allowed Milwaukee to inspect the scene was on March 15, 2022, almost two years after the fire.

- Before March 15, 2022, Plaintiffs did not preserve the fire scene, allowing numerous people to access the scene for inspections and to remove items. Plaintiffs did not record each time the scene was accessed, who accessed the scene, what items were removed or rearranged, or those items' locations before and after each inspection. Because of this, the fire scene had been substantially altered before Milwaukee was allowed to inspect.

- After the Milwaukee battery cells were moved during Stevick's September 24, 2020 inspection, Plaintiffs retained Meier who inspected the fire scene for the first time on November 16, 2020. Stevick also attended this inspection, but neither the fire marshal nor any representative from Milwaukee were present. Meier was told that the fire marshal found the Milwaukee battery cells in the area of origin and placed them on the table. Meier and Stevick collected 15 bags of artifacts including the Milwaukee battery cells that had been relocated during Stevick's inspection. Meier labeled the Milwaukee battery cells as being in the area of origin and transferred the 15 bags to Stevick.

- Plaintiffs entire claim against Milwaukee is based on the false premise that the fire marshal found Milwaukee battery cells in the area of origin and placed them on the table. But this is incorrect. In fact, there were **no** Milwaukee battery cells on the table next to the area of origin ***until*** they were placed there during Stevick's own inspection, which occurred five months after the fire. While the fire marshal's photos taken the day after the fire actually show that no Milwaukee battery cells were placed on the table by the fire marshal.

## **<u>EVIDENCE INDEX</u>**

1.      Milwaukee requests that the Court take judicial notice of the pleadings on file

with the Court and relies on the following evidence attached to this motion:

- **Exhibit A:** Diagram of Kurt Decker's business and home, from Richard J. Meier Summary Report dated November 13, 2023 at p. 7.

- **Exhibit B:** Victoria County Fire Marshal's Office, Case No. 04-12-2020, Incident Report.

- **Exhibit C:** Victoria County Fire Marshal's Office, Case No. 04-12-2020, screenshots of native images with Info metadata.

- **Exhibit D:** Excerpts from the deposition of Plaintiff John Rippamonti taken December 19, 2023.

- **Exhibit E:** June 1, 2020 letter to Plaintiffs' initial counsel from Chris Kastens, an investigator hired by Hudson Specialty Insurance Company (KURTDECKER 012603–012604).

- **Exhibit F:** August 31, 2020 retention e-mail from Plaintiffs' counsel to Glen Stevick, Exhibit 2 to Glen Stevick Deposition taken February 22, 2024.

- **Exhibit G:** BEAR Retainer Agreement, produced with Glen Stevick Expert File on February 20, 2024.

- **Exhibit H:** Excerpts from the deposition of Glen Stevick taken February 22, 2024.

- **Exhibit I:** Excerpts from the deposition of Richard J. Meier taken March 1, 2024.

- **Exhibit J:** Screenshots of native images with Info metadata taken on September 24, 2020 by Glen Stevick, produced with G. Stevick Expert File on February 20, 2024.

- **Exhibit K:** Request for Investigation, Exhibit 6 to Richard J. Meier Deposition taken on March 1, 2024.

- **Exhibit L:** Evidence Inventory Receipt, Exhibit 16 to Richard J. Meier Deposition taken on March 1, 2024.

- **Exhibit M:** Screenshots of native images with Info metadata taken on November 16, 2020 by Richard J. Meier, produced with Richard J. Meier Expert File on February 29, 2024.

- **Exhibit N:** Plaintiffs' produced photographs of Milwaukee drill and a Milwaukee M12 charger (KURTDECKER000340–342; 00344–345).

## BACKGROUND

2.        This case involves a fire to Decker's workshop that occurred on April 12, 2020.[3]

The Victoria County Fire Marshal inspected the fire scene on April 12, 13, 15, and 20, 2020.[4]

The fire marshal's photos from these inspections show no Milwaukee products in the area of

origin or on the table next to the area of origin. Moreover, the fire marshal's report stated:

> It appears the fire had moved towards the table next to the
> shelves, burning all the materials in that area and continuing up
> and across the building. **We placed the items that we found on
> top of a metal table and photographed them.**[5]

The fire marshal's photos show the items he collected and placed on the table next to the area

of origin ("Table 1") on April 13, 2020, none of which were Milwaukee products or batteries.

The photos below show the fire marshal removing the car battery charger from the area of

origin and placing it on the table as described in the fire marshal's report.[6]



**Apr. 13, 2020, Victoria County Fire Marshal photograph "DSC_0536"**

---

[3] *See* Doc. 92.
[4] *See* Ex. C, Victoria County Fire Marshal's Office, Case No. 04-12-2020, screenshots of native images at pp. 1–4, "DSCF0447", "Alpha", "IMG_20200415_092914", and DSCF0524" (with Info metadata).
[5] *See* Ex. B, Victoria County Fire Marshal's Office, Case No. 04-12-2020, Incident Report at p. 2.
[6] *See* Ex. C at pp. 5–12, screenshots of native images "DSC_0536 – DSC_0543".



**Apr. 13, 2020, Victoria County Fire Marshal photograph "DSC_0542"**

The fire marshal's report documented that he also could not determine the cause of the fire:

> We could not determine the exact cause of the fire but did determine the area of origin.[7]

Below is the fire marshal's diagram of the fire scene.[8]



---

[7] *See* Ex. B at p. 2.
[8] *See id.* at p. 7.

3.      Decker's good friend and co-plaintiff, John Rippamonti, testified that he accessed the fire scene one or two days after the fire and took pictures.[9] On June 1, 2020, Chris Kastens, an investigator hired by Hudson Specialty Insurance Company, sent a letter to Plaintiffs' initial counsel in anticipation of an inspection and item removal scheduled for June 2, 2020:[10]

> Mr. Decker's family has authorized the owners/insurers of those autos **to enter the premises and remove items** including the items from the loss location on 6/2/20.
> …
> **There may be evidence at the loss location that will be damaged or lost through the removal of the autos.** We feel it prudent to advise Kurt Decker through his family representative of the importance of preservation of evidence at the loss location in the event claims, other than those being submitted for consideration to Hudson Specialty Insurance Company, exist or arise in the future.

4.      Despite being advised of and aware of their duty to preserve the evidence at the fire scene, Plaintiffs allowed vehicles to be removed from the scene on June 2, 2020.[11] Plaintiffs have not provided pictures, videos, or a record documenting who was present and what was removed during this vehicle extraction. The full extent of the activity that occurred and the items that were moved or removed from the scene on June 2, 2020 is unknown. But it is clear that before Milwaukee ever had an opportunity to inspect the scene, the scene was significantly altered from the state it was in immediately after the fire.

---

[9] *See* Ex. D, J. Rippamonti Dep. (Dec. 19, 2023) at 44:25–46:1.
[10] *See* Ex. E, KURTDECKER 012603 (emphasis added).
[11] *Id.*

5.      Rippamonti testified that he accessed the fire scene "maybe four or five times" before March 15, 2022 and removed things that he thought may be salvageable.[12] One of the days Rippamonti went to the scene was July 24, 2020.[13]

6.      On August 31, 2020, Plaintiffs' counsel sent an email to Glen Stevick to retain him as a lithium-ion battery expert. This email included the false statement that "[t]he Fire Chief said origin of fire was a Milwaukee Power Tool rechargeable battery."[14]

---

**New Case - Tool Battery Explosion**

**Beth Sund** <bsund@levinsimes.com>                                                      Mon, Aug 31, 2020 at 8:04 AM
To: Chelsea Torgersen-Bell <chelseabearinc@gmail.com>, "gstevick@gmail.com" <gstevick@gmail.com>, Rong Yuan <rongbearinc@gmail.com>
Cc: Angela Nehmens <anehmens@levinsimes.com>, PITeam <piteam@levinsimes.com>

Good morning,

We have a new case where our client's home caught fire April 12, 2020 in Victoria, Texas. Our client suffered a cardiac event due to smoke inhalation and also suffered a PE. He had burns over 30% of his body. The Fire Chief said origin of fire was a Milwaukee Power Tool rechargeable battery. We would like to retain BEAR and will be reaching out the Fire Chief so he can provide the evidence to BEAR.  The client's name is Kurt Decker and our reference is LSA 026775. When you can please send a Retainer.  The attorneys on the case are Rachel Abrams and Angela Nehmens.

---

On September 23, 2020, Plaintiffs' counsel signed a retainer agreement with Stevick which identified the job as "Kurt Decker Tool Battery Explosion."[15]

---

**Berkeley Engineering And Research Inc.**
**R E T A I N E R   A G R E E M E N T**                                                           **BEAR**
BEAR Job ID: **20-5384G** Kurt Decker Tool Battery Explosion

**EXPERT SERVICES AGREEMENT**

Berkeley Engineering And Research, Inc. (herein referred to as BEAR below) agrees to perform expert consulting services for the
Case: **20-5384G** Kurt Decker Tool Battery Explosion and for Levin Simes Abrams LLP (herein referred to as **The Client**). By
signing this Agreement, The **Client** retains BEAR to perform consulting services.

I am authorized to sign this agreement.

Client **Rachel Abrams / Levin Simes Abrams LLP**   Client Signature / Date   **09/23/2020**

---

[12] *See* Ex. D at 77:24–25; 78:24–79:10.

[13] *See* Ex. D at 47:21–25.

[14] *See* Ex. F, Aug. 31, 2020 retention e-mail, Ex. 2 to G. Stevick Dep. (Feb. 22, 2024).

[15] *See* Ex. G, BEAR Retainer Agreement, produced with G. Stevick File on Feb. 20, 2024.

7.      Five months after the fire, on September 24, 2020, Stevick inspected Decker's workshop for the first time.[16] Rippamonti was present during this inspection and Stevick believes Plaintiffs' counsel was also present.[17] Plaintiffs' fire cause and origin expert, Richard Meier, had not been retained yet and was not present during this inspection.[18] Additionally, neither Milwaukee nor the fire marshal were present during this inspection.

8.      Stevick's photos from this inspection are time stamped in the image metadata from 6:22 a.m. to 7:09 a.m. on September 24, 2020.[19] At 6:22 a.m., Stevick took photos which show <u>no Milwaukee battery cells or chargers</u> on Table 1 next to the area of origin:

 

**Sept. 24, 2020 at 6:22 a.m.** (IMG_7607)       **Sept. 24, 2020 at 6:22 a.m.** (IMG_7608)[20]

Stevick took photos at 6:23 a.m. showing Milwaukee battery cells on the ground in the middle of the room, outside the area of origin:

---

[16] *See* Ex. H, G. Stevick Dep. (Feb. 22, 2024) at 20:3–9.
[17] *See id.* at 20:16–18; *see* Ex. D at 62:20–25.
[18] *See* Ex. H at 20:20–21; *see* Ex. I., R. Meier Dep. (Mar. 1, 2024) at 21:1–2; 30:5–8.
[19] *See* Ex. J, screenshots of G. Stevick native images at pp. 1, 18, "IMG_7607" and "IMG_7763" taken on Sept. 24, 2020 (with Info metadata), produced on Feb. 20, 2024 in G. Stevick Expert File.
[20] *See* Ex. J at pp. 1–2, screenshots of G. Stevick native images "IMG_7607" and "IMG_7608".



**Sept. 24, 2020 at 6:23 a.m.** (IMG_7615)[21]

As Stevick continued his inspection, he took additional photos at 6:50 a.m. of these Milwaukee

battery cells on the ground in the middle of the room:

 

**Sept. 24, 2020 at 6:50 a.m.** (IMG_7716)          **Sept. 24, 2020 at 6:50 a.m.** (IMG_7715)[22]

---

[21] *See* Ex. J at p. 3, screenshot of G. Stevick native image "IMG_7615".
[22] *See* Ex. J at pp 8–10, screenshots of G. Stevick native images "IMG_7715" and "IMG_7716". IMG_7716 is attached along with a brightened copy for clarity.

9.      Five minutes later at 6:55 a.m., Stevick took photos of this same area, but the battery cells were no longer on the ground:



**Sept. 24, 2020 at 6:55 a.m.** (IMG_7720)[23]

Stevick then photographed these battery cells on Table 1 at 6:55 a.m.:



**Sept. 24, 2020 at 6:55 a.m.** (IMG_7721)[24]

---

[23] *See* Ex. J at p. 11, screenshot of G. Stevick native image "IMG_7720".
[24] *See* Ex. J at p. 12, screenshot of G. Stevick native image "IMG_7721".

But Stevick's earlier photos show these battery cells were NOT on Table 1 and instead were on the ground outside the area of origin:



**Sept. 24, 2020 at 6:22 a.m.** (IMG_7608)[25]

10.     Additionally, based on the sequential IMG numbers of Stevick's photos, his file is missing two photos that were taken before the Milwaukee battery cells were relocated: IMG_7675 and IMG_7678. This is significant because the photos between the missing ones (IMG_7676 and IMG_7677) are the two photos below of Table 1 taken at 6:38 a.m.:



**Sept. 24, 2020 at 6:38 a.m.** (IMG_7676)



**Sept. 24, 2020 at 6:38 a.m.** (IMG_7677)[26]

---

[25] *See* Ex. J at p. 2, screenshot of G. Stevick native image "IMG_7608".
[26] *See* Ex. J at pp. 5–6, screenshots of G. Stevick native images "IMG_7676" and "IMG_7677".

The diagram below shows where the two missing photos should be in Stevick's file.



| IMG_7674.jpg 6:34 a.m. | IMG_7675. jpg | IMG_7676.jpg 6:38 a.m. | IMG_7677.jpg 6:38 a.m. | IMG_7678. jpg | IMG_7679.jpg 6:39 a.m.[27] |

Accordingly, the shady circumstances provide considerable suspicion that the two missing photos more closely depicted the area on Table 1 where the Milwaukee battery cells were relocated.

11.      Based on Stevick's photos, the Milwaukee battery cells were collected from the middle of the room between 6:50 a.m. and 6:55 a.m. and placed on Table 1 next to the items the fire marshal had placed there five months earlier.



---

[27] *See* Ex. J at pp. 4–7, screenshots of G. Stevick native images "IMG_7674", "IMG_7676", "IMG_7677", and "IMG_7679".

12.     After the Milwaukee battery cells were relocated to Table 1, Stevick took pictures of additional battery cells on the ground in between the Toolboxes and Table 3. At 6:57 a.m., Stevick photographed a black battery cell next to the Southeast leg of Table 3:



**Sept. 24, 2020 at 6:57 a.m.** (IMG_7736)[28]

This black battery cell was also picked up and photographed at 6:58 a.m.:



**Sept. 24, 2020 at 6:58 a.m.** (IMG_7741)    **Sept. 24, 2020 at 6:58 a.m.** (IMG_7742)[29]

Rippamonti testified that during this inspection, Stevick and he found battery cells on the ground and that Stevick picked up 18650 battery cells.[30]

---

[28] *See* Ex. J at p. 15, screenshot of G. Stevick native image "IMG_7736".
[29] *See* Ex. J at pp. 16-17, screenshots of G. Stevick native images "IMG_7741" and "IMG_7742".
[30] *See* Ex. D at 63:6–9.

13.     Stevick did not make a written record of the locations of any artifacts during this inspection and referred Plaintiffs to Meier to use as a fire cause and origin expert to collect artifacts. Plaintiffs retained Meier on October 7, 2020.[31] Meier's expert file shows that he filled out a request for investigation form that included "Key Words Li-ion battery."[32]

14.     Meier inspected the scene for the first time on November 16, 2020, seven months after the fire and two months after the Milwaukee battery cells were relocated during Stevick's inspection.[33] Stevick was also present during this inspection but no one from Milwaukee nor the fire marshal were present.[34] Meier admitted that in the seven months between the fire and his initial inspection, he did not know how many times the fire scene had been accessed, but understood that some people did access the scene to look for and remove tools, in addition to the vehicles that were removed.[35]

15.     During the inspection, Meier found the car battery charger that the fire marshal placed on Table 1 seven months earlier along with the Milwaukee battery cells that had been placed there during Stevick's inspection two months earlier. Meier was told that the items on Table 1 including the Milwaukee battery cells "were collected by the Fire Marshal and placed on the table."[36] Based on this false representation, Meier photographed and collected the Milwaukee battery cells on Table 1, labeled them as Bag 7, and identified their location as being on the East wall, in the area of origin.[37]

---

[31] *See* Ex. I at 21:1–2.
[32] *See* Ex. K, Request for Investigation, Ex. 6 to R. Meier Dep. (Mar. 1, 2024).
[33] *See* Ex. I at 30:5–8.
[34] *See* Ex. I at 31:1–2.
[35] *See* Ex. I at 32:4–23.
[36] *See* Ex. I at 76:15–18; *see also* Ex. I at 34:17–20; 40:12–18; 86:20–24.
[37] *See* Ex. L, Evidence Inventory Receipt, Ex. 16 to R. Meier Dep. (Mar. 1, 2024).

16.     Meier's photos of the Milwaukee battery cells on Table 1 show they had been slightly rearranged since Stevick's inspection and there was also a black battery cell on Table 1 that was not in any of Stevick's photos of Table 1 from two months earlier:




**Sept. 24, 2020 at 6:55 a.m.** (IMG_7721)[38]    **Nov. 16, 2020 at 12:30 p.m.** (IMG_7389)[39]

Meier collected the black battery cell, labeled it as Cell 7A, and identified its location as on the East wall.[40] Cell 7A appears identical to the black battery cell that Stevick photographed and picked up near the Southeast leg of Table 3 on September 24, 2020:




**Sept. 24, 2020 at 6:57 a.m.** (IMG_7736)    **Sept. 24, 2020 at 6:58 a.m.** (IMG_7741)[41]

---

[38] *See* Ex. J at p. 12, screenshot of G. Stevick native image "IMG_7721".
[39] *See* Ex. M, screenshots of R. Meier native image at p. 1, "IMG_7389" taken on November 16, 2020 (with Info metadata), produced on Feb. 29, 2024 in R. Meier Expert File.
[40] *See* Ex. L, Evidence Inventory Receipt, Ex. 16 to R. Meier Dep. (Mar. 1, 2024).
[41] *See* Ex. J at pp. 15–16, screenshots of G. Stevick native images "IMG_7736" and "IMG_7741".

Remarkably, this black battery cell is not present in Meier's photos of this area on November 16, 2020. After taking photos, Meier collected five bags of artifacts from this area, none of which included a black battery cell. *Compare* Meier's photos *with* Stevick's photos:



| | |
|---|---|
| **Nov. 16, 2020 at 2:16 p.m.** (IMG_7529) | IMG_7529 [enlarged][42] |
| **Nov. 16, 2020 at 5:29 p.m.** (IMG_7550) | **Nov. 16, 2020 at 5:29 p.m.** (IMG_7540)[43] |
| **Sept. 24, 2020 at 6:56 a.m.** (IMG_7726) | **Sept. 24, 2020 at 6:57** (IMG_7734)[44] |

[42] *See* Ex. M at p. 2, screenshot of R. Meier native image "IMG_7529".

[43] *See* Ex. M at pp. 4, 3, screenshot of R. Meier native images "IMG_7550" and "IMG_7540".

[44] *See* Ex. J at pp. 13–14, screenshot of G. Stevick native images "IMG_7726" and "IMG_7734".

Cell 7A is critical to Stevick's new M12 liability theory because he claims Cell 7A could be from a M18 or M12 Milwaukee battery pack.

17.      Accordingly, on September 24, 2020, Stevick photographed and picked up a black battery cell near the Southeast leg of Table 3. None of Stevick's photographs from September 24, 2020 show a black battery cell on Table 1. On November 16, 2020, Meier photographed a black battery cell on Table 1 and labeled it Cell 7A. The black battery cell Stevick picked up two months earlier was not present in Meier's photos of this area on November 16, 2020.



18.      Meier and Stevick collected 15 bags of artifacts during the November 16, 2020 inspection.[45] Meier labeled the location of the artifacts as "East Wall" or "On Toolbox Center

---

[45] *See* Ex. N, Plaintiffs produced pictures of what appear to be a Milwaukee drill (KURTDECKER000340–342) and a Milwaukee M12 charger (KURTDECKER000344–345) that were not collected by Plaintiffs' experts or made available to Milwaukee. It is unclear where these two items were recovered from at the fire scene.

of Room"[46] but did not place any flags or tents identifying the exact spot each artifact was recovered from.[47] After Meier and Stevick collected the artifacts and Meier identified their location, the artifacts were transferred to Stevick who signed for it that same day.[48] Stevick took the 15 bags of artifacts to his laboratory in California and the artifacts were never returned to their locations at the fire scene.

## **STANDARD**

19.     "Spoliation is the 'destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Allstate Tex. Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 683 (S.D. Tex. 2013) (quoting *Rimkus Consulting Grp. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)).[49] Allegations of spoliation are generally addressed through FED. R. CIV. P. 37(b),[50] however, a court may "use its inherent power to assess sanctions if the alleged conduct occurs before a case is filed." *Allstate*, 964 F. Supp. 2d at 682.

20.     It is well settled that the fundamental purpose of discovery is to search for the truth, so that trials may be decided by what the facts disclose, not by what facts are concealed. *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984) (*overruled on other grounds by Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992)). Spoliation is an evidentiary concept, not a separate cause of action. *See Trevino v. Ortega*, 969 S.W.2d 950, 952 (Tex. 1998). The

---

[46] *See* Ex. L.
[47] NFPA 921, 17.5.2.1 "Physical evidence should be thoroughly documented before it is moved."
[48] *See* Ex. L, Evidence Inventory Receipt, Ex. 16 to R. Meier Dep. (Mar. 1, 2024).
[49] NFPA 921, 12.3.5 defines spoliation as "Spoliation of evidence refers to the loss, destruction, or material alteration of an object or document that is evidence or potential evidence in a legal proceeding by one who has the responsibility for its preservation. Spoliation of evidence, or the alteration of the scene significantly impairs the opportunity of other interested parties to obtain the same evidentiary value from the evidence, as did any prior investigator."
[50] Rule 37 does not apply if the spoliation occurred before suit was filed. *Allstate*, 964 F. Supp. 2d at 682.

spoliation analysis involves a "two-step judicial process:" (1) the trial court determines whether, as question of law, spoliation of evidence has occurred, and (2) if spoliation occurred, the trial court "must assess an appropriate remedy." *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 14 (Tex. 2014). For spoliation claims, a court considers whether (1) there was a duty to preserve evidence; (2) a breach of that duty; and (3) the spoliation prejudiced the innocent party's ability to present its case or defense. *Id.* at 683.

21.     Typically, the spoliation inquiry involves an evidentiary hearing outside the presence of the jury. *See Brookshire Bros., Ltd*., 438 S.W.3d at 20. Permissible sanctions for spoliation range in severity from striking a party's pleadings, a spoliation instruction to the jury, to dismissal of the spoliating party's claims or defenses. *Id*. The trial court's imposition of a spoliation remedy is reviewed for abuse of discretion. *Id*. at 27.

<u>**ARGUMENTS & AUTHORITIES**</u>

**A.     Plaintiffs' Duty to Preserve the Fire Scene Arose Immediately After the Fire Occurred.**

22.     Because of the severity of the fire, Plaintiffs should have anticipated litigation immediately after the fire. Regardless, on June 1, 2020, Hudson sent Plaintiffs' attorney a letter advising them of their duty to preserve the fire scene and the concern that evidence may be lost when the vehicles are removed on June 2, 2020.[51] "A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Allstate*, 964 F. Supp. 2d at 684. As such, Plaintiffs were aware that the fire scene and its contents would be relevant evidence to the impending litigation.[52]

---

[51] *See* Ex. E.
[52] NFPA 921, 17.3.1 "Every attempt should be made to protect and preserve the fire scene, because evidence could easily be destroyed or lost in an improperly preserved fire scene." NFPA 921, 17.3.1.1 "Generally,

23.     There is no dispute that by August 31, 2020, Plaintiffs were aware that Milwaukee products and their location within the fire scene were relevant. Plaintiffs' counsel sent Stevick an email that included the false statement that "[t]he Fire Chief said origin of fire was a **Milwaukee Power Tool rechargeable battery**."[53] Moreover, Stevick's retainer agreement identified the job as "Kurt Decker **Tool Battery** Explosion." Accordingly, Plaintiffs were explicitly aware that they had a duty to preserve Milwaukee products and their location.

**B.     Plaintiffs Breached their Duty by Intentionally Relocating Milwaukee Battery Cells into the Area of Origin During Stevick's Inspection.**

24.     Plaintiffs breached their duty to preserve the evidence when Milwaukee battery cells were intentionally relocated to appear as if they had been in the area of origin. Parties need only take reasonable care in, but not extraordinary measures, to preserve evidence. *Id.* Bad faith is conduct involving "fraudulent intent and desire to suppress the truth" and "destruction for the purpose of depriving the adversary of the evidence." *Id.* (quoting *Ashton v. Knight Transportation, Inc.*, 772 F. Supp. 2d 772, 800–01 (N.D. Tex. 2011)).

25.     Plaintiffs' and Stevick's misconduct cannot be labeled anything less than intentional conduct for the purpose of suppressing the truth and depriving Milwaukee of the ability to present its defense. Plaintiffs' initial correspondence with Stevick demonstrates the backwards investigation of this case. Plaintiffs' counsel informed Stevick that "[t]he Fire Chief said origin of fire was a Milwaukee Power Tool rechargeable battery."[54] Based on this false

---

the cause of a fire or explosion is not known until near the end of the investigation. Therefore, the evidentiary or interpretative value of various pieces of physical evidence observed at the scene may not be known until, at, or near the end of the fire scene examination, or until the end of the complete investigation. As a result, the entire fires scene should be considered physical evidence and should be protected and preserved."

[53] *See* Ex. F.

[54] *Id.*

assumption, Stevick likely expected to show up to the fire scene on September 24, 2020, photograph Milwaukee battery packs on Table 1 and collect them for testing at his laboratory.

26.      However, when Stevick arrived for his inspection and started taking close up photos[55] of the items the fire marshal placed on Table 1 at 6:38 a.m., he realized the items did not include any Milwaukee battery packs or chargers. Faced with this realization, Stevick or someone with him found Milwaukee battery packs outside the area of origin and placed them on Table 1. Stevick then photographed the battery cells on Table 1 at 6:55 a.m. to give the false impression that the fire marshal placed them on Table 1 on April 13, 2020.[56]

27.      Aware of this misconduct, Stevick did not collect the Milwaukee battery cells from the scene or record their locations. Instead, he referred Plaintiffs to use Meier as a fire cause and origin expert to collect the artifacts for Stevick. Plaintiffs retained Meier because Meier was not tainted with knowledge of the misconduct during Stevick's September 24, 2020 inspection. Moreover, Meier was told that the fire marshal found the Milwaukee battery cells in the area of origin and placed them on the table. As such, Meier and Stevick returned to the fire scene and collected 15 bags of artifacts on November 16, 2020. Stevick was careful to make sure Meier was the one who identified the Milwaukee battery cells as being in the area of origin. Stevick then signed the evidence transfer form that same day, took possession of the 15 bags, and moved them to his laboratory.

28.      The purposeful alteration of the scene during Stevick's inspection coupled with the subsequent cover up attempt constitutes bad faith. It is clear Plaintiffs assumed Milwaukee was liable before Stevick's inspection. But when the physical evidence didn't match their

---

[55] As discussed above, two of these photos are missing from Stevick's file.
[56] *See* Ex. J at p. 12, screenshot of G. Stevick native image "IMG_7721".

assumed conclusion, Plaintiffs and Stevick purposefully altered the scene so that it would. The tampering of evidence at the scene and the subsequent cover up attempt by deleting photos and hiring an expert as a middleman constitute bad faith.

## C.    Plaintiffs' Intentional Misconduct During Stevick's Inspection Has Caused Prejudice to Milwaukee.

29.    The alteration of the fire scene in the almost two years before Milwaukee was permitted to inspect the scene in addition to the purposeful alteration during Stevick's inspection prejudiced Milwaukee's ability to examine evidence and defend or refute Plaintiffs' claims. "The prejudice requirement is satisfied once the party seeking sanctions demonstrates the missing evidence is relevant to their case." *Allstate*, 964 F. Supp. 2d at 685. "The destroyed evidence is relevant if a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Id.*

30.    The relevancy of the artifacts and their location within the fire scene is unquestionably relevant because Plaintiffs' theory of liability requires that its battery packs were charging in the area of origin. Furthermore, by altering the fire scene and removing 15 bags of artifacts a year and a half before Milwaukee was permitted to inspect the fire scene, Milwaukee was denied an opportunity to observe or inspect any fire artifacts recovered from the scene in their location immediately after the fire. Accordingly, the locations of the artifacts including the Milwaukee battery cells immediately after the fire is relevant. Moreover, it is uncertain what items were in the fire's area of origin before the fire began, that may be a possible ignition source. By allowing access to the scene for items to be removed and rearranged in the two years before Milwaukee was allowed to inspect has materially compromised Milwaukee's ability to defend against Plaintiffs' claims.

31.     The main basis behind Meier's conclusory opinion that a Milwaukee battery cell caused the fire is that he ruled out all possible sources within the area of origin, except the Milwaukee battery cells.[57] The prejudice to Milwaukee is that Meier's opinion is dependent on the Milwaukee battery cells being in the area of origin, which was arranged during Stevick's inspection.

32.     In determining the proper sanction, courts look to "which sanction best (1) deters parties from future spoliation, (2) places the risk of an erroneous judgment on the spoliating party, and (3) restores the innocent party to their rightful litigation position." *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 804 (N.D. Tex. 2011). Sanctions for spoliation of evidence may include "awarding attorney fees, deeming certain facts admitted, giving an adverse inference instruction to the jury, *excluding evidence or expert testimony*, striking pleadings, entering a default judgment, and dismissing the case entirely." *Allstate*, 964 F. Supp. 2d at 683 (emphasis added). Due to "a wealth of circumstantial evidence suggest[ing] a cover-up," the *Allstate* court struck all evidence regarding the testing of destroyed fire samples and any expert opinions that relied on such testing. *See id.* at 686.

33.     The purpose of a sanction for spoliation is "to impose an appropriate remedy so that the parties are restored to a rough approximation of what their positions would have been were the evidence available." *Brookshire Bros., Ltd.*, 438 S.W.3d at 18. To level the evidentiary playing field, Stevick and his firm, Berkeley Engineering and Research Inc, should be completely struck as an expert due to the misconduct that occurred during his inspection. The Court should also limit Meier's testimony by excluding as unreliable all evidence and

---

[57] *See* Ex. I at 69:13–70:5.

conclusions gathered after Stevick's September 24, 2020 inspection and any opinions on which Meier relied on Stevick. *See Iwanaga v. Daihatsu Am., Inc.*, No. SA 99-CA-711 WWJ, 2001 WL 1910564, at *10–11 (W.D. Tex. Oct. 19, 2001) (limiting expert testimony by excluding as unreliable all evidence gathered after evidence was removed "under dubious circumstances").

## PRAYER

For the reasons stated in this motion, Milwaukee prays that the Court grant this Motion for Sanctions, strike Plaintiffs' liability expert, Glen Stevick and his firm, Berkeley Engineering and Research Inc, and limit the testimony of Plaintiffs' Expert Richard Meier by excluding as unreliable all evidence and conclusions gathered after Stevick's September 24, 2020 inspection and grant Milwaukee such other and further relief that Milwaukee may be entitled to in law or in equity.

Respectfully submitted,

**DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.**

By: */s/ Michael D. Robbins*
Michael D. Robbins
State Bar No. 16984700
Federal ID No. 1362
mrobbins@drhrlaw.com
440 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 228-5100 Telephone
(713) 228-6138 Facsimile

**ATTORNEY-IN-CHARGE FOR MILWAUKEE ELECTRIC TOOL CORPORATION**

**OF COUNSEL:**
Cody T. Dowling
State Bar No. 24119044
Federal ID No. 3684326
cdowling@drhrlaw.com
DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.
The Lyric Centre
440 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 228-5100 Telephone
(713) 228-6138 Facsimile

Jessica Z. Barger
State Bar No. 24032706
Federal ID No. 2907402
E. Marie Jamison
State Bar No. 24044647
Federal ID No. 611126
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
Telephone: (713) 572-4321
Facsimile: (713) 572-4320
barger@wrightclosebarger.com
jamison@wrightclosebarger.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing instrument was served upon the following by electronic service on May 7, 2024:

Rachel B. Abrams
*Pro Hac Vice*
rabrams@peifferwolf.com
Brian J. Perkins
*Pro Hac Vice*
bperkins@peifferwolf.com
Sara Craig
*Pro Hac Vice*
scraig@peifferwolf.com
Peiffer Wolf Carr Kane Conway & Wise LLP
555 Montgomery Street, Suite 820
San Francisco, California 94111

John W. Griffin, Jr.
jwg@lawmgk.com
Marek, Griffin & Knaupp
The McFaddin Building
203 N. Liberty Street
Victoria, Texas 77901

**Attorneys for Plaintiffs**

*/s/ Michael D. Robbins*
Michael D. Robbins